683 N.E.2d 1286 (1997)
291 Ill. App.3d 559
225 Ill.Dec. 623
Michael BUSHELL, Plaintiff-Appellant,
v.
CATERPILLAR, INC., a foreign corporation, and Charles Van Tine, individually and as employee and agent for Caterpillar, Inc., Defendants-Appellees.
No. 3-96-0820.
Appellate Court of Illinois, Third District.
August 6, 1997.
*1287 Donald R. Jackson (argued), Jackson, Mitchell & Collier, Peoria, Raymond J. Callery, Peoria, for Michael Bushell.
Wayne L. Hanold, J. Phillip Krajewski (argued), Westervelt, Johnson, Nicoll & Keller, Peoria, for Caterpillar, Inc. and Charles Van Tine.
Presiding Justice LYTTON delivered the opinion of the court:
Pursuant to the central agreement between defendant Caterpillar, Inc. and the union to which plaintiff Michael Bushell belonged, an arbitration hearing was conducted regarding Caterpillar's termination of plaintiff's employment. Defendant Charles Van Tine, a manager at the engine plant where plaintiff had worked, testified that plaintiff slept on the job and falsified employment records. Plaintiff filed suit in circuit court, alleging that Van Tine and Caterpillar had defamed him. After defendants filed a motion pursuant to section 2619 of the Code of Civil Procedure (735 ILCS 5/2619 (West 1994)), the circuit court dismissed the case, finding that, as a matter of law, defendants had absolute immunity for statements made in quasi-judicial proceedings. Plaintiff appealed, asserting that private arbitration proceedings do not constitute quasi-judicial proceedings. We affirm.
A narrow class of cases exist in which defamatory statements are absolutely privileged. Ringier America, Inc. v. Enviro-Technics, Ltd., 284 Ill.App.3d 1102, 1105, 220 Ill.Dec. 532, 534, 673 N.E.2d 444, 446 (1996), citing Allen v. Ali, 105 Ill.App.3d 887, 890, 61 Ill.Dec. 678, 680, 435 N.E.2d 167, 169 (1982). The defense of absolute privilege rests upon the idea that conduct which otherwise would be actionable is permitted to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation. Thomas v. Petrulis, 125 Ill.App.3d 415, 418, 80 Ill.Dec. 713, 715, 465 N.E.2d 1059, 1061 (1984), quoting W. Prosser, Torts § 114, at 776 (4th ed.1971). Absolute privilege provides complete immunity from civil action, even though the statements are made with malice, because public policy favors the free and unhindered flow of information. Ringier America, 284 Ill.App.3d at 1105, 220 Ill.Dec. at 534, 673 N.E.2d at 446; Starnes v. International *1288 Harvester Co., 184 Ill.App.3d 199, 203, 132 Ill.Dec. 566, 568, 539 N.E.2d 1372, 1374 (1989). The privilege embraces statements made in the course of judicial or quasi-judicial proceedings. Parrillo, Weiss & Moss v. Cashion, 181 Ill.App.3d 920, 925, 130 Ill.Dec. 522, 525, 537 N.E.2d 851, 854 (1989). Whether an otherwise actionable defamatory statement is protected by absolute privilege is a question of law. Joseph v. Collis, 272 Ill.App.3d 200, 210, 208 Ill.Dec. 604, 611, 649 N.E.2d 964, 971 (1995); Layne v. Builders Plumbing Supply Co., 210 Ill.App.3d 966, 969, 155 Ill.Dec. 493, 495, 569 N.E.2d 1104, 1106 (1991).
In determining the scope of absolute privilege, Illinois courts have relied upon the Restatement (Second) of Torts (1977). See Layne, 210 Ill.App.3d at 971-72, 155 Ill.Dec.at 497, 569 N.E.2d at 1108; Starnes, 184 Ill.App.3d at 204-05, 132 Ill.Dec. at 569, 539 N.E.2d at 1375. Section 587 of the Restatement (Second) provides:
"A party to a private litigation * * * is absolutely privileged to publish defamatory matter concerning another in communications * * * during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding." Restatement (Second) of Torts, § 587 (1977).
The comments to section 587 indicate that the privilege extends to communications such as those in this case:
"The rule stated in this Section is applicable to protect parties to any action before a judicial tribunal.
* * *
Judicial proceedings include all proceedings in which an officer or tribunal exercises judicial functions * * * an arbitration proceeding may be included." Restatement (Second) of Torts § 587, comments b and f, at 249-50 (1977) (emphasis added).
In similar fashion, section 588 of the Restatement (Second) provides:
"A witness is absolutely privileged to publish defamatory matter concerning another * * * as part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding." Restatement (Second) of Torts, § 588 (1977).
The comments to section 588 also indicate applicability in an arbitration procedure such as the one in this case. See Restatement (Second) of Torts § 588, comment d, at 251 (1977).
The comments to sections 587 and 588 explicitly cite comment c of section 585, which provides:
"The exercise of the judicial function is * * * not confined to tribunals created by legislative provisions. Thus, in a grievance proceeding arising under a collective bargaining agreement, the arbiter is exercising a judicial function* * *." Restatement (Second) of Torts § 585, comment c, at 245-46 (1977) (emphasis added).
Of course, not all grievance or arbitration proceedings are identical in scope or type; thus, we confine our analysis to the case before us.
Under Illinois law, a tribunal is quasi-judicial when its possesses powers and duties to (1) exercise judgment and discretion; (2) hear and determine or ascertain facts and decide; (3) make binding orders and judgments; (4) affect the personal or property rights of private persons; (5) examine witnesses, compel the attendance of witnesses, and hear the litigation of issues on a hearing; and (6) enforce decisions or impose penalties. Adco Services, Inc. v. Bullard, 256 Ill.App.3d 655, 659, 195 Ill.Dec. 308, 310-11, 628 N.E.2d 772, 774-75 (1993); Kalish v. Illinois Education Association, 157 Ill.App.3d 969, 971-72, 110 Ill.Dec. 72, 75, 510 N.E.2d 1103, 1106 (1987). A quasi-judicial body need not possess all six powers; however, the more powers it possesses, the more likely the body is acting in a quasi-judicial manner. Kalish, 157 Ill.App.3d at 972, 110 Ill.Dec. at 75, 510 N.E.2d at 1106.
Under the central agreement in this case, the arbitrator was engaged by the parties "for the sole purpose of adjudicating disputes that are properly before him." The arbitrator possessed the power to apply and interpret the provisions of the collective bargaining agreement in reaching his decision; however, he was required to refrain from *1289 acting as mediator, conciliator or independent investigator. The decision of the arbitrator was and is "final and binding upon all parties to the dispute." The precise procedural powers of the arbitrator were not enumerated in the central agreement.
In the absence of an agreement to the contrary, arbitration proceedings in Illinois are governed by the terms of the Uniform Arbitration Act. 710 ILCS 5/1 et seq. (West 1994). Under the Act, arbitration proceedings involve the presentation of evidence and the cross-examination of witnesses. 710 ILCS 5/5 (West 1994). Arbitrators are empowered to issue subpoenas for the attendance of witness, and administer oaths. 710 ILCS 5/7(a) (West 1994). Arbitration orders and awards are judicially enforceable and they are appealable in the same manner as civil cases. 710 ILCS 5/14-18 (West 1994).
Based strictly upon the record before us, we agree with the trial judge that the arbitration proceedings constituted quasi-judicial proceedings, and therefore defendants are absolutely immune from suit for communications made in plaintiff's arbitration hearing. None of the cases cited by the defendant mandate a contrary result. Matviuw v. Johnson, 70 Ill.App.3d 481, 26 Ill.Dec. 794, 388 N.E.2d 795 (1979) and Fisher v. Illinois Office Supply Co., 130 Ill.App.3d 996, 86 Ill.Dec. 66, 474 N.E.2d 1263 (1984) predate the Layne decision, and neither case discussed the six-factor analysis now widely employed in determining whether a body is quasi-judicial. Indeed, in Fisher, this court went "beyond the briefs" in addressing the absolute privilege issue. Fisher, 130 Ill.App.3d at 999, 86 Ill.Dec. at 68, 474 N.E.2d at 1265. Fisher relied heavily upon a Massachusetts case, Ezekiel v. Jones Motor Co., 374 Mass. 382, 372 N.E.2d 1281 (1978). A careful review of Ezekiel, however, reveals that the grievance proceedings there bore little resemblance to Illinois arbitration proceedings. Compare Ezekiel, 374 Mass. at 386-88, 372 N.E.2d at 1285 ("protections against false testimony simply do not exist at a labor grievance hearing * * * [the] witness at a grievance hearing need not give sworn testimony"), with 710 ILCS 5/7(a) (West 1994) ("The arbitrator may issues subpoenas for the attendance of witnesses * * * and shall have the power to administer oaths").
A majority of jurisdictions that have addressed this issue now hold that absolute immunity applies to grievance and arbitration hearings. See Annotation, Libel and Slander: Privileged Nature of Communications Made in Course of Grievance or Arbitration Procedure Provided for by Collective Bargaining Agreement, 60 A.L.R.3d 1041 (1974). Among the jurisdictions that do not afford such protection to parties and witnesses, California courts are bound by unique statutory terminology extending the privilege only to "official" proceedings, and the lack of full judicial review of arbitration cases. Moore v. Conliffe, 15 Cal.Rptr.2d 791, 794-96 (1993). "There is no such provision in Illinois." Matviuw, 70 Ill.App.3d at 488, 26 Ill.Dec. at 799, 388 N.E.2d at 800.
Under Illinois law, absolute immunity applied to the arbitration proceeding in this case. We wish to emphasize, however, that this does mean that persons may lie to arbitrators with impunity.[1] While absolute privilege provides complete immunity from civil action (Ringier America, 284 Ill.App.3d at 1105, 220 Ill.Dec. at 534, 673 N.E.2d at 446), it does not preclude criminal prosecution for perjury (720 ILCS 5/32-2 (West 1996)) or subornation of perjury (720 ILCS 5/32-3 (West 1996)). Further, disciplinary proceedings against professionals can be taken. For instance, Illinois Rules of Professional Conduct provide that a lawyer shall not knowingly make a false statement before a tribunal (134 Ill.2d R. 3.3(a)(1)); assist in a fraudulent act (134 Ill.2d R. 3.3(a)(2)); offer evidence known to be false (134 Ill.2d R. 3.3(a)(4)); participate in the creation or preservation of false evidence (134 Ill.2d R. 3.3(a)(5)); assist a client in conduct known to be illegal (134 Ill.2d R. 3.3(a)(6)); and/or falsify evidence or counsel or assist a witness to testify falsely (134 Ill.2d R. 3.4(a)(2)). When arbitrators reasonably believe that any such violation has occurred, they should not hesitate to bring this to the attention of proper authorities. *1290 Under such circumstances, the reporting arbitrator is protected by absolute immunity. See Starnes, 184 Ill.App.3d at 204, 132 Ill.Dec. at 568, 539 N.E.2d at 1374 ("In Illinois, this rule has been applied to * * * communications to prosecuting authorities concerning alleged criminal activities"), and Kalish 157 Ill.App.3d at 976, 110 Ill.Dec. at 78, 510 N.E.2d at 1109 ("Complaints to * * * the Attorney Registration and Disciplinary Commission are absolutely privileged").
The judgment of the circuit court of Peoria County is affirmed.
Affirmed.
BRESLIN and MICHELA, JJ., concur.
NOTES
[1] We express no opinion as to whether the defendant witness in this action was lying in the grievance procedure, as plaintiff has alleged in his complaint.