# Illinois Official Reports

## Appellate Court

---

**Powell v. American Service Insurance Co., 2014 IL App (1st) 123643**

---

| | |
|---|---|
| Appellate Court Caption | RANDY POWELL, Plaintiff-Appellant, v. AMERICAN SERVICE INSURANCE COMPANY, an Illinois Insurance Corporation, Defendant-Appellee. |
| District & No. | First District, First Division<br>Docket No. 1-12-3643 |
| Filed | February 18, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from an automobile accident that occurred when plaintiff was making a U-turn in front of a vehicle operated by defendant's insured and the insured crashed into plaintiff's vehicle, the trial court properly dismissed plaintiff's second amended complaint against the insurer, as the assignee of the insured's rights, alleging that her insurer acted in bad faith by failing to settle plaintiff's claim within the $20,000 policy limits, since plaintiff failed to allege a reasonable probability that defendant's insured would be found liable for plaintiff's injuries, especially when plaintiff made no allegations that he was making a proper U-turn pursuant to the requirements of section 11-802(a) of the Illinois Vehicle Code, including the requirement that the U-turn be made "in safety and without interfering with other traffic." |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-9770; the Hon. Frank Castiglione, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Cohn & Cohn, of Chicago (Charles A. Cohn and Erwin Cohn, of counsel), for appellant.<br><br>Sanchez Daniels & Hoffman, of Chicago (John J. Piegore and Brian H. Sanchez, of counsel), for appellee. |

Panel JUSTICE DELORT delivered the judgment of the court, with opinion. Justices Hoffman and Cunningham concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff Randy Powell appeals from the dismissal with prejudice of his second amended complaint against defendant, American Service Insurance Company (ASI). The circuit court found that plaintiff failed to state a claim for bad-faith failure to settle within policy limits and dismissed the complaint pursuant to section 2-615 (735 ILCS 5/2-615 (West 2010)) of the Illinois Code of Civil Procedure. For the following reasons, we affirm.

¶ 2                                    BACKGROUND

¶ 3    On February 7, 2001, plaintiff allegedly sustained injuries in an automobile accident in Mundelein, Illinois, involving ASI's insured, Katie Linares. Plaintiff sued Linares in Lake County, claiming that she negligently operated her motor vehicle. ASI defended Linares in accordance with the terms of her automobile liability policy, which had an indemnity limit of only $20,000 per person. On June 5, 2006, plaintiff's counsel made a demand for settlement for the $20,000 policy limit. ASI rejected the settlement offer.

¶ 4    The case proceeded to trial. A jury found Linares 60% at fault and plaintiff 40% at fault for the accident. The jury awarded plaintiff a net verdict of $47,951.15 plus costs. After trial, Linares assigned her rights under the policy to plaintiff, who then filed his initial complaint for bad faith against ASI on September 16, 2011.

¶ 5    The circuit court dismissed plaintiff's original and first amended complaints, both with leave to replead. On August 9, 2012, plaintiff filed a second amended complaint, in which he alleged:

> "6. Based on information known to the defendant, American Service, at and prior to the transmission of the above described letter [requesting settlement for the policy limits], including the deposition testimony in the prior action of Randy Powell and of Katie Linares, both taken on December 18, 2002, facts were readily apparent that the principal proximate cause of the accident causing injury to the then plaintiff, Randy Powell, was the failure of the then defendant, Katie Linares, to keep a proper lookout for the vehicle driven by Powell. Specifically, Linares was operating her vehicle on northbound Medline Drive, a private street or corporate driveway in Mundelein, Illinois, behind the van being operated by Powell, saw him make a left turn attempting to make a U-turn and stopping in front of the Linares vehicle either perpendicular or at a northwest angle to the northbound roadway, and, rather than apply her brakes or attempt to veer behind the van driven by Powell, veered directly into the van striking it broadside with a strong impact.

7. As a result of the aforementioned facts, the defendant, American Service, was on notice, at and prior to the transmission of the above described letter, that its insured failed to see and properly react to what was obvious in front of her and probable operation of her vehicle at excessive speed and that there was a reasonable probability of a finding of at least 50 percent fault against its insured, Linares.

8. Based on the information known to defendant, American Service, at and prior to the transmission of the above described letter, the defendant, American Service, was aware that there was a worker's compensation lien for worker's compensation benefits paid to and for the benefit of Powell arising from the accident that was the basis of the prior action, in excess of $74,000.00 of which there were medical charges then in excess of $23,000.00, which facts created a reasonable probability that recovery of Powell at trial would be in excess of the $20,000.00 policy limit of the policy issued by American Service to Linares."

¶ 6 Plaintiff alleged that ASI had a reasonable opportunity to settle plaintiff's claim against Linares within the policy limits. He also alleged ASI's failure to settle within the policy limits constituted bad faith because ASI: (1) refused to participate in settlement negotiations or alternatively refused to participate in settlement negotiations in good faith; (2) refused settlement offers made by plaintiff to settle his claim within the policy limits; (3) failed to advise Linares of the settlement offer; and (4) failed to keep the interests of Linares equal to its own. Plaintiff sought a total of $40,449.43 in damages, which was the remainder of the $27,915.15 judgment after the policy limit was subtracted, plus postjudgment interest and costs.

¶ 7 ASI moved to dismiss the second amended complaint, arguing that plaintiff failed to plead sufficient facts to show a reasonable probability that Linares was at least 50% at fault. ASI also asserted plaintiff failed to plead sufficient facts demonstrating a reasonable probability of damages in excess of the policy limits.

¶ 8 The circuit court concluded that plaintiff failed to plead facts showing a reasonable probability of recovery in excess of the policy limits. Noting that this was plaintiff's third attempt to plead, the court stated:

"A reasonable person certainly could have viewed the facts and concluded that, no, we decided not to tender the policy because on liability we have an excellent chance of winning and would be a case of zero. *** While the facts may or may not have been decided that way by the trier of fact, I don't find they were unreasonable in their assessment of the case at the time."

¶ 9 The circuit court granted ASI's motion to dismiss with prejudice. Plaintiff timely appeals.

¶ 10 ANALYSIS

¶ 11 Plaintiff argues that his second amended complaint adequately alleged facts to establish a claim for bad-faith failure to settle. According to plaintiff, the term "reasonable probability" as contemplated by our supreme court in the key case of *Haddick v. Valor Insurance*, 198 Ill. 2d 409 (2001), does not require pleaded facts showing "an extremely strong probability of a verdict for the plaintiff." Plaintiff notes that no Illinois authority has defined "reasonable probability" in the context of a bad-faith pleading, but asserts his second amended complaint

contains sufficiently detailed allegations "as to what American Service knew or should have known [as] to the liability of its insured in causing the accident and what its anticipated damages would be."

¶ 12                          Standard of Review

¶ 13    The question presented by a section 2-615 motion to dismiss is whether sufficient facts have been pled in the complaint which, if proved, would entitle the plaintiff to relief. *Thornton v. Shah*, 333 Ill. App. 3d 1011, 1020 (2002). All well-pleaded facts in the complaint are taken as true and are construed in the light most favorable to the plaintiff. *Indeck North American Power Fund, L.P. v. Norweb PLC*, 316 Ill. App. 3d 416, 430 (2000). A complaint can be dismissed under section 2-615 only when it clearly appears that no set of facts could be proved under the pleadings that would entitle the plaintiff to relief (*Casualty Insurance Co. v. Hill Mechanical Group*, 323 Ill. App. 3d 1028, 1033 (2001)), and where the circuit court can determine the relative rights of the parties solely from the pleadings (*Thornton*, 333 Ill. App. 3d at 1020). "A plaintiff cannot rely simply upon conclusions of law or fact unsupported by specific factual allegations." *Johnson v. Matrix Financial Services Corp.*, 354 Ill. App. 3d 684, 688 (2004). We review the dismissal of a complaint pursuant to section 2-615 *de novo*. *Haddick*, 198 Ill. 2d at 414.

¶ 14           Illinois Recognizes Insurers Have Good-Faith Duty to Settle

¶ 15    Illinois courts have recognized that insurers have a duty to act in good faith when responding to settlement offers. *Id*. According to our supreme court:

>        "The 'duty to settle' arises because the policyholder has relinquished defense of the suit to the insurer. The policyholder depends upon the insurer to conduct the defense properly. In these cases, the policyholder has no contractual remedy because the policy does not specifically define the liability insurer's duty when responding to settlement offers. The duty was imposed to deal with the specific problem of claim settlement abuses by liability insurers where the policyholder has no contractual remedy." *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 526 (1996).

¶ 16    This case involves a third-party claim against the insurer to recover damages in excess of the policy limits following an offer to settle the underlying claim against the policyholder for an amount equal to the policy limits. Under these circumstances, " 'the insurer may have an incentive to decline the settlement offer and proceed to trial. The insurer may believe that it can win a verdict in its favor. In contrast, the policyholder may prefer to settle within the policy limits and avoid the risk of trial. The insurer may ignore the policyholder's interest and decline to settle.' " *Haddick*, 198 Ill. 2d at 415 (quoting *Cramer*, 174 Ill. 2d at 525-26).

¶ 17              Pleading Standard for Bad-Faith Cases in Illinois

¶ 18    In *Haddick*, our supreme court set forth the elements required to establish a bad-faith claim. To sustain a cause of action for bad faith, the plaintiff must allege: (1) the duty to settle arose; (2) the insurer breached the duty; and (3) the breach caused injury to the insured. *Haddick*, 198 Ill. 2d at 416. A plaintiff must allege sufficient facts to demonstrate the existence of the duty to settle in good faith. *Id*. at 417. A sufficient pleading of facts to establish this duty

includes "when a claim has been made against the insured and there is a reasonable probability of recovery in excess of the policy limits and a reasonable probability of a finding of liability against the insured." *Id*. The duty does not arise until a third party demands settlement within policy limits, which occurred here. *Id*.

¶ 19 The bad-faith claim in *Haddick* also arose from an automobile accident. There, James Griffith and Larry Woodley, Jr., were involved in a single-vehicle accident that resulted in Griffith's death. A police report showed that Woodley owned the vehicle and was driving it at the time of the accident. A police officer investigating the accident located Woodley at the hospital. Woodley told the officer that he was driving. After detecting an odor of alcohol on Woodley's breath, the officer issued him a ticket for driving under the influence. Within a week of the accident, Woodley informed the same officer that he did not remember the accident and did not know who had been driving the vehicle.

¶ 20 Woodley had liability coverage through the defendant insurance company of $20,000 per person. The attorney for the decedent's estate notified the defendant that the decedent incurred medical bills totaling $82,544.80 as a result of the accident. After the attorney for the decedent's estate made a demand for settlement, the defendant responded that it would discuss settlement once it received a copy of the police report. Thereafter, the defendant sent correspondence to the attorney acknowledging receipt of the police report, but holding off settlement discussion because an investigation was still pending to ascertain the actual driver of the vehicle.

¶ 21 The decedent's mother filed a wrongful death claim against Woodley. She demanded settlement for policy limits within 14 days of receipt of the demand letter. The defendant responded that the settlement demand was premature due to the continuing investigation of the accident. The plaintiff extended the deadline, but the defendant did not settle by the requested date. One year after the accident, the defendant offered to settle the case for the policy limits, which the plaintiff then refused. The circuit court granted summary judgment in favor of the plaintiff and entered a judgment in the amount of $150,924.80. Woodley then assigned all claims against his insurer to the plaintiff.

¶ 22 The plaintiff filed a bad-faith claim against the defendant, alleging that the defendant failed to settle her claim against Woodley within the policy limits. The circuit court dismissed the plaintiff's complaint pursuant to section 2-615, finding that the defendant had no duty to settle the claim prior to suit being filed and that the plaintiff could not maintain a bad-faith claim once she withdrew her demand for policy limits.

¶ 23 The *Haddick* court found that, at the time the plaintiff demanded the policy limits, the defendant was aware the decedent's medical bills exceeded the $20,000 liability coverage. *Id*. at 417-18. The defendant knew that Woodley owned the vehicle. The defendant also was aware that the police report showed Woodley had informed an emergency room doctor that he had been driving the vehicle at the time of the accident. Even though Woodley later stated he could not remember who was driving the vehicle, the supreme court noted that proof of ownership raises a presumption that the owner of the vehicle was in control of it at the time of the accident. *Id*. at 418. According to the supreme court, because Woodley was unable to recall the accident at the time of the plaintiff's settlement demand, he would have been unable to rebut the presumption.

¶ 24    The *Haddick* court concluded that the facts alleged by the plaintiff demonstrated a reasonable probability of recovery in excess of the policy limits and a reasonable probability of a finding of liability against Woodley. *Id*. The plaintiff sufficiently alleged the existence of the duty to settle in good faith when she made her settlement demand. *Id*.

¶ 25                    Pleading a Bad-Faith Claim Following *Haddick*

¶ 26    Although *Haddick* has been consistently followed in a number of cases, none of them have addressed the stringency level of the pleading standard required to survive a section 2-615 motion to dismiss a complaint alleging bad faith by a third party. See, *e.g.*, *SwedishAmerican Hospital Ass'n of Rockford v. Illinois Medical Inter-Insurance Exchange*, 395 Ill. App. 3d 80, 105 (2009) (reversing summary judgment in favor of defendant insurer because genuine issue of material fact remained as to probability of adverse finding of liability for breach of duty to settle); *O'Neill v. Gallant Insurance Co.*, 329 Ill. App. 3d 1166, 1175 (2002) (affirming jury verdict finding insurer acted in bad faith where the odds of a jury rejecting the plaintiff's claim "were astronomical" and defense counsel knew the jury verdict would exceed coverage); *U.S. Fire Insurance Co. v. Zurich Insurance Co.*, 329 Ill. App. 3d 987, 1003 (2002) (in a declaratory judgment action, the excess insurance carrier failed to allege sufficient facts under section 2-615 to establish breach of duty to settle by the primary carrier). Our courts have not further expounded upon what constitutes a sufficient pleading of "a reasonable probability" as it relates to recovery in excess of the policy limits or a finding of liability against the insured in a third-party action. We examine the second amended complaint with this in mind.

¶ 27                Sufficiency of Facts Alleged in Second Amended Complaint

¶ 28    Plaintiff argues he sufficiently alleged a reasonable probability of recovery in excess of the policy limits. He also asserts the second amended complaint sufficiently pleads ultimate facts demonstrating a reasonable probability of liability and the manner in which ASI became aware of this liability.[1] We address these arguments in turn.

¶ 29            Reasonable Probability of Recovery in Excess of Policy Limits

¶ 30    In paragraph 8 of the second amended complaint, plaintiff alleged, "[b]ased on the information known to defendant," ASI "was aware" of a worker's compensation lien and medical bills exceeding the $20,000 policy limits. According to plaintiff, this awareness was enough to establish a reasonable probability that recovery would be in excess of the policy limits.

¶ 31    Problematically, plaintiff alleges ASI "was aware," but does not elaborate *how* or *when* ASI became aware of the potential for damages to exceed the policy limits. In contrast, the facts in *Haddick* show the attorney for the decedent's estate sent the defendant insurer a letter delineating the amount of medical bills before the demand for settlement. In this case, the second amended complaint does not make clear at what point ASI became aware that the

---

[1]In his opening brief, plaintiff repeatedly argues he also alleged sufficient facts to establish breach of duty to settle in his first amended complaint. We reject plaintiff's attempt to argue the dismissal of the first amended complaint because the circuit court granted plaintiff leave to replead and plaintiff never appealed that dismissal order.

damages could exceed the policy limits and, instead, simply concludes ASI "was aware that there was a worker's compensation lien for worker's compensation benefits paid to and for the benefit of Powell arising from the accident that was the basis of the prior action, in excess of $74,000.00 of which there were medical charges then in excess of $23,000.00."

¶ 32     Despite these deficiencies, we must take all well-pleaded facts as true and all reasonable inferences from those facts are drawn in favor of plaintiff. *Haddick*, 198 Ill. 2d at 414. Interpreting that ASI "was aware" of the potential for damages to exceed policy limits, as we must, we find plaintiff sufficiently pled facts to establish a reasonable probability of recovery in excess of the policy limits.

¶ 33                              Reasonable Probability of Liability

¶ 34     Next, plaintiff claims paragraph 6 of his second amended complaint properly alleges a reasonable probability of a finding of liability against ASI. According to plaintiff, "[t]he evidence as to what specifically American Service knew and when it knew it is for discovery and trial, with the finder of fact deciding if the facts known to American Service created a 'reasonable probability' of recovery." Plaintiff argues that the circuit court usurped the role of trier of fact by summarily dismissing the second amended complaint.

¶ 35     A review of plaintiff's second amended complaint, and specifically paragraphs 6 and 7, belies his contention. The allegations at issue are both vague and conclusory at best. Plaintiff pled he made a U-turn in front of Linares' vehicle and that Linares, "rather than apply her brakes or attempt to veer behind the van driven by [plaintiff], veered directly into the van striking it broadside with a strong impact." Plaintiff alleged Linares "failed to see and properly react to what was obvious in front of her."

¶ 36     The "reasonable probability" standard set forth in *Haddick* requires pleading facts that demonstrate liability is "probable," as opposed to merely "possible." *Haddick*, 198 Ill. 2d at 417. In other words, we read *Haddick* as requiring the pleading of facts which show that liability is at least more likely than not, but not necessarily a certainty.

¶ 37     The facts in *Kavanaugh v. Interstate Fire & Casualty Co.*, 35 Ill. App. 3d 350 (1975), are demonstrative, as that case also involves an automobile accident where liability was less than certain. There, the plaintiff's automobile collided with a truck. At the time of the collision, the plaintiff had personal liability insurance coverage of $10,000 per person with one of the defendants, Royal Indemnity Company (Royal). The plaintiff also had $15,000 in excess coverage with the other defendant, Interstate Fire and Casualty Company (Interstate). The plaintiff's passenger, Carol Sheehan, brought the initial personal injury action in federal court against the plaintiff. A jury returned a liability finding against the plaintiff in the amount of $45,000, which was $20,000 in excess of his combined insurance coverage. The plaintiff thereafter commenced a suit against Royal and Interstate claiming breach of the duty to settle. The plaintiff alleged that both of the defendants failed to offer their policy limits before he was found liable in the Sheehan case. A jury found in favor of the plaintiff and against both Royal and Interstate for $20,000 plus interest, and against Royal alone for $25,000 in punitive damages.

¶ 38     On appeal, the defendants argued the circuit court erred by failing to grant their motion for judgment *n.o.v.* The reviewing court noted that the allegations in the plaintiff's second

amended complaint "were based upon the theory that defendants had a legal duty to offer their policy limits before [the plaintiff] was found liable." *Id.* at 356. The court also noted a well-recognized exception to the general principle when the probability of an adverse finding of liability is great and the amount of probable damages would greatly exceed the coverage. *Id.* The court found that exception did not apply to the facts of the case because "the issue of liability was not clear cut." *Id.* The plaintiff was subject to a low degree of care under the so-called Illinois "Guest Statute" for automobile passengers (Ill. Rev. Stat. 1975, ch. 95½, ¶ 10-201 (now 625 ILCS 5/10-201 (West 2010))), which heightened his probability of success when compared to the trucking codefendants. *Kavanaugh*, 35 Ill. App. 3d at 356. In addition, Sheehan exonerated the plaintiff in a statement, admitting she never questioned his ability to control the vehicle on the night of the accident. The *Kavanaugh* court reversed the circuit court's decision to deny the defendants' motion for judgment *n.o.v.* and remanded with directions to enter judgment *n.o.v.* in favor of the defendants. *Id.* at 357.

¶ 39      Here, section 11-802(a) of the Illinois Vehicle Code (625 ILCS 5/11-802(a) (West 2010)) provides that "[t]he driver of any vehicle shall not turn such vehicle so as to proceed in the opposite direction unless such movement can be made in safety and without interfering with other traffic." Subsection (b) states that "[n]o vehicle shall be turned so as to proceed in the opposite direction upon any curve, or upon the approach to or near the crest of a grade, where such vehicle cannot be seen by the driver of any other vehicle approaching from either direction within 500 feet." 625 ILCS 5/11-802(b) (West 2010).

¶ 40      Given the nature of the accident, and plaintiff's admission that he made a (potentially illegal) U-turn in front of Linares' vehicle, we cannot conclude plaintiff sufficiently pled facts demonstrating a reasonable probability of liability against Linares. Plaintiff did not allege he made the U-turn "in safety and without interfering with other traffic." We also do not know from the facts as pled whether plaintiff made the U-turn on a road that had a curve or crest which would have prevented Linares from seeing him prior to impact. Plaintiff simply concludes in his second amended complaint that Linares "failed to see and properly react to what was obvious in front of her." However, the facts as pled do not support what was alleged to be "obvious." "Trial attorneys are not endowed with the gift of prophecy so as to be able to predict the precise outcome of personal injury litigation." *Kavanaugh*, 35 Ill. App. 3d at 357. Furthermore, the mere fact that the insurance company was unsuccessful in the trial of a case does not show that its defense was made in bad faith. *Id.*

¶ 41      We find plaintiff's claim was properly dismissed because of his failure to plead the necessary elements of a bad-faith claim. In particular, the complaint does not plead sufficient facts to establish a reasonable *probability*, as opposed to possibility, of liability in the underlying case.

¶ 42      We also reject plaintiff's attempt to argue a reasonable probability of liability existed because of the jury's comparative liability finding above 50% in the underlying case. The *Haddick* court made clear that the reasonable probability standard applies at the time of the settlement demand because this is when the duty to settle arises. *Haddick*, 198 Ill. 2d at 417.

¶ 43      Finally, we conclude by our *de novo* review of the record that the circuit court did not usurp the trier of fact when it dismissed plaintiff's second amended complaint. Plaintiff simply failed to plead the necessary facts to establish his claim for bad faith after being given three

opportunities to do so.

¶ 44                                    CONCLUSION

¶ 45      The circuit court properly dismissed plaintiff's second amended complaint pursuant to section 2-615 of the Code of Civil Procedure. Plaintiff's second amended complaint failed to allege sufficient facts establishing a duty to settle the underlying claim.

¶ 46      Affirmed.